UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

– against –

JAMES BECKISH,

                Defendant.

**OPINION & ORDER**

17 Cr. 569 (ER)

RAMOS, D.J.:

    Before this Court are two post-conviction motions by James Beckish: (1) a *pro se* petition for a writ of *coram nobis* altering this Court's forfeiture and restitution findings in its Judgment of June 24, 2019, and (2) a counseled second petition for compassionate release. For the following reasons both motions are denied.

**I.     BACKGROUND**

    Beckish pleaded guilty on October 11, 2018 to one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371. Letter from United States to Judge Ramos ex. A ("Plea Agreement") (July 22, 2020), Doc. 250. The scheme for which he pleaded guilty involved setting up companies that purportedly sold dietary supplements, acquiring credit card numbers in bulk, and then fraudulently charging those credit cards over a period of some months. *Id.* ex. B ("Plea Tr.") at 18. Although some customers requested refunds from Beckish's network of businesses and others received at least $7.2 million in chargebacks from their credit card companies, the Government estimates that Beckish's company was ultimately responsible for up to $28 million in fraudulent charges. Sentencing Tr. at 5, Doc. 165. Before criminal charges were filed, Beckish made a payment of $5.9 million to his credit card processor to settle some of his company's responsibility for customer chargebacks. *Id.* at 13:6–15.

    In his plea agreement, Beckish agreed to forfeit approximately $7.2 million to the Government, and he agreed to make restitution in an amount no less than $7.2 million.

Plea Agreement at 2.  He also agreed to waive his rights to direct or collateral appeal of any order of restitution equal to or less than $7.2 million.  *Id.* at 4.

At his plea allocution on October 11, 2018, Beckish was placed under oath.  Plea Tr. at 3:5.  In a colloquy with the Court, Beckish confirmed that he had not been recently under the care of a doctor or psychiatrist, that he had not been treated for any mental illness or alcohol addiction, and that he had not had any drugs, alcohol or medication.  *Id.* at 4:3–16.  When the Court asked, "Is your mind clear today?" and "[A]re you feeling well enough to proceed and to understand what is going on here today?"  Beckish answered, "Yes."  *Id.* at 4:17–22.  Based on this colloquy, the Court found Beckish "fully competent to waive indictment and enter a guilty plea . . . ."  *Id.* at 17–20.

The Court reviewed the plea agreement with Beckish, as well.  It asked whether he had read the agreement, whether he discussed it with his attorney, and whether he fully understood the agreement.  Plea Tr. at 15:14–16:23.  Beckish, who had completed high school, *id.* at 3:25, answered "Yes" to each of those questions.  *Id.* at 15:14–16:23.  When the Court noted that Beckish's appellate rights would be "severely restricted" by the terms of the plea agreement, he indicated that he understood those consequences.  *Id.* at 17:13–18.  The Court further asked whether Beckish admitted to the forfeiture allegations contained within the operative information, and he indicated he had.  *Id.* at 22:14–15.  The Court then found that Beckish "knows his rights and is waiving them knowingly and voluntarily with an understanding of the consequences of the plea," and accepted his guilty plea.  *Id.* at 22:18–24.

On April 16, 2019, this Court sentenced Beckish to a 48-month term of imprisonment, 3 years of supervised release, restitution in the amount of approximately $7.2 million, a special assessment of $100, and forfeiture in the amount of approximately $7.2 million  J. in a Criminal Case, Doc. 182.  At the sentencing hearing, Beckish's counsel addressed the prior $5.9 million settlement Beckish had entered into with his credit card processor and said, "I'm not suggesting that [the settlement] has anything to

do with the restitution amount . . . ." Sentencing Tr. at 16:3–6. The Government agreed that no part of the $5.9 million settlement would be credited to the restitution amount. *Id.* at 15:11–14.

On May 2, 2020, Beckish petitioned for compassionate release through counsel under 18 U.S.C. § 3582(c)(1)(A)(i). Doc. 225. Citing a finding in his presentence investigation report, Beckish argued that a surgical procedure to remove his gallbladder and evidence of "onset signs of cirrhosis of the liver" were extraordinary and compelling reasons to modify his sentence in light of the COIVD-19 pandemic. Doc. 226 at 6–8. At the time, his minimum-security satellite prison camp in Miami had not reported any infections among its population. *Id.* at 10.

After briefing and a hearing, the Court denied his petition on May 12, 2020. Order (May 12, 2020), Doc. 233. Although the Court found his petition timely brought, the Court did not find that he had presented sufficient medical proof that he was at risk from contracting and suffering from COVID-19. Letter from United States to Judge Ramos ex. A ("Hr'g Tr.") at 20 5–14 (July 24, 2020), Doc. 251. It further noted that Beckish had completed relatively little of his sentence and that he had "greatly earned his ticket into" prison. *Id.* at 19:7–8, 24–25; *see also* Order (May 12, 2020) (denying petition "[a]fter considering the factors set forth in 18 U.S.C. § 3553(a), ad for the reasons set forth on the record").

Beckish filed his petition for a writ of *coram nobis* in June 2020 *pro se*, Doc. 236, and he filed his second petition for compassionate release in July 2020 through counsel. Doc. 246. He has submitted no declarations or other evidence with either petition, although he cites the Bureau of Prison's data releases to indicate that his prison facility is currently facing nearly 100 cases of COVID-19. Doc. 247 at 1; *see also COVID-19 Update*, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last updated Aug. 3, 2020) (reporting 95 infected inmates at "Miami FCI"). The Government represents that all of

3

these cases are in the minimum-security prison adjacent to the prison camp where Beckish is housed.  Letter from United States to Judge Ramos at 2–3 (July 24, 2020).

## II. WRIT OF *CORAM NOBIS*

"The enforceability of an appellate waiver made 'knowingly, voluntarily, and competently' is a longstanding principle of Second Circuit law." *United States v. Bilal*, 941 F. Supp. 2d 397, 401 (S.D.N.Y. 2013) (Chin, J.) (quoting *United States v. Riggi,* 649 F.3d 143, 147 (2d Cir. 2011)).  Such appeal waivers apply to orders of restitution and attempts to collaterally attack sentences through writs of *coram nobis*.  *See, e.g.*, *id.* at 401–02 ("Thus, a knowing and voluntary waiver can preclude a defendant's right . . . to oppose an order of restitution contemplated by a plea agreement" (citing *United States v. Pearson,* 570 F.3d 480, 485 (2d Cir. 2009)); *United States v. Sanchez*, No. 03 Cr. 965 (SHS), 2010 WL 5222131, at *2 (S.D.N.Y. Dec. 22, 2010) (denying writ of *coram nobis* due to appeal waiver in plea agreement).

Courts in the Second Circuit generally enforce such plea agreements unless the defendant does not enter into the waiver "knowingly, voluntarily, and competently."  *See United States v. Gomez-Perez*, 215 F.3d 315, 318 (2000).  Grounds for vacatur of a waiver also include, "when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, when the government breached the plea agreement, or when the sentencing court failed to enunciate any rationale for the defendant's sentence . . . ." *Id.* (internal citations removed).

Beckish entered into a waiver of his appellate rights through his plea agreement, and therefore the Court presumptively bars his ability to challenge the restitution and forfeiture orders that are part of his judgment of conviction.  *See Gomez-Perez*, 215 F.3d at 218.  In arguing that this Court ignore his waiver, Beckish only provides one reason: that when he "came into prison, he was disoriented and unable to make proper decisions due to this substance abuse problems" and that this disorientation "skewed his decision

4

making process and resulted in his agreeing to certain aspects during his sentencing hearing that were incorrect." Doc. 236 at 3.  He now claims that the $7.2 million restitution order and associated $7.2 million forfeiture order were improperly calculated.

His assertions of confusion during the time when he discussed his plea fly in the face of the clear record from the plea hearing.  Beckish, under oath, testified that he had no alcohol or medication in the 24 hours prior to his plea hearing.  He indicated that he was of clear mind.  The Court confirmed that Beckish had reviewed the plea agreement, which laid out the agreed-to restitution and forfeiture amounts twice, with counsel and had signed it.  The Court further reviewed the consequences of the appeal waiver with Beckish and confirmed that he had understood it.  After this lengthy colloquy, Beckish admitted his guilt.  As the Court noted when imposing his sentence, Beckish is a "very capable individual" and the conspiracy in which he engaged was very "sophisticated in its means." Sentencing Tr. at 20:17–21.  It beggars belief, given the record before the Court, that Beckish's plea and waiver of his rights was anything other than knowing, voluntary, and competently executed.

Given that Beckish does not allege ineffective assistance of counsel or any other factor that might suggest his waiver of appellate rights was not entered into knowingly, voluntarily, or competently, the Court declines to consider the merits of his petition.  It is DENIED.[1]

## III. COMPASSIONATE RELEASE

Although a court may not normally "modify a term of imprisonment once it has been imposed," there are certain limited exceptions, including "compassionate release." *See United States v. Roberts*, No. 18 Cr. 528 (JMF), 2020 WL 1700032, at *1 (S.D.N.Y. Apr. 8, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)).  A court may reduce a

---

[1] Even if the Court were to construe Beckish's petition as an effort to apply his previous $5.9 million civil settlement to the amount of restitution owed, it is his burden to bring proof that indicates the $5.9 million was for the same loss found by the Court at his sentencing hearing.  *See United States v. Smathers*, 879 F.3d 453, 461 (2d Cir. 2018).  He has not done so.

prisoner's sentence when it finds that there are "extraordinary and compelling reasons" that warrant such a reduction on motion of the Director of the Bureau of Prisons or on the prisoner's own motion after he has exhausted his administrative remedies. § 3582(c)(1)(A).

Once a petition for compassionate release is properly brought before a court, its discretion is guided by the policy statement in U.S. Sentencing Guidelines § 1B1.13.  *See* § 3582(c)(1)(A).  The Guidelines place three conditions on a determination of early release:

(1) The existence of "extraordinary and compelling reasons [that] warrant the reduction";

(2) A situation where "the defendant is not a danger to the safety of any other person or to the community"; *and*

(3) When the reduction is otherwise consistent with the policy statements of the Guidelines.

§ 1B1.13.  The Guidelines include as an "extraordinary and compelling reason" the existence of "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* cmt. 1(A)(ii)(I).

The Court denied Beckish's first petition for compassionate release because he did not provide any proof of any serious medical condition that would put him at an extreme risk of serious illness or death from the infection by the novel coronavirus.  Beckish has presented no further proof in his second petition.  The only change in circumstances brought to this Court is the beginning of an outbreak in the Miami low-security prison.  But, as the Court said in its denial of Beckish's first petition, the concern presented by the presence of the novel coronavirus in a Bureau of Prisons facility "does not mean that every individual gets to be released from prison."  Hr'g Tr. at 19:22–23.  Accordingly, Beckish's second petition for compassionate release is DENIED.

## IV. CONCLUSION

For the foregoing reasons, Beckish's petitions are denied. The Clerk of Court is respectfully directed to terminate the motions, Docs. 236 and 246.

It is SO ORDERED.

Dated: August 5, 2020
       New York, New York

_____
EDGARDO RAMOS, U.S.D.J.